UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNETTA H. NICHOLAS,<br><br>    Plaintiff,<br><br>       v.<br><br>U.S. DEPARTMENT OF TREASURY, *et al.*,<br><br>    Defendants. | Civil Action No. 20-2088 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Annetta H. Nicholas, a former District of Columbia Public Schools teacher, brings this action against the U.S. Department of Treasury and the District of Columbia Retirement Board seeking a reversal of their decisions regarding her retirement benefits. She is currently receiving a disability-retirement benefit effective from May 31, 2006, but instead desires a different and greater benefit effective from April 4, 2018. Each Defendant now moves for summary judgment, and the Court will grant those Motions.

**I.   Background**

The Court sets forth the statutory framework before turning to the factual and procedural background of Plaintiff's case.

    A.   Statutory Framework

DCPS employees are eligible to participate in the District of Columbia Teachers' Retirement Plan, for which the city and the Federal Government share financial responsibility. See Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251, 715–31; D.C. Code § 1-701, *et seq.* While the District of Columbia Retirement Board (DCRB) administers the Plan and

1

controls the Teachers' Retirement Fund, see D.C. Code § 1-711(a), the U.S. Department of Treasury funds Plan benefits based on service performed through June 30, 1997. See Alston v. Lew, 950 F. Supp. 2d 140, 141 (D.D.C. 2013); Miley v. Lew, 42 F. Supp. 3d 165, 167 (D.D.C. 2014).

The Plan provides for, *inter alia*, voluntary- and disability-retirement benefits, and it sets forth eligibility criteria for each. "Any teacher who completes 5 years of eligible service" and meets enumerated age and service requirements by the time of retirement is entitled to receive a voluntary-retirement benefit. See D.C. Code § 38-2021.03(a). Separately, "[a]ny teacher who completes 5 years of eligible service" is entitled to a disability-retirement benefit if she "acquires a physical or mental disability" "before becoming eligible for retirement" and is found "to be physically or mentally incapacitated for efficient service." Id. § 38-2021.04(a). Voluntary- and disability-retirement benefits are paid for the life of the beneficiary, but the latter can be terminated if the retiree recovers from a non-permanent disability, "is able to discharge [her] duties as a teacher" for DCPS, and is reappointed. Id. §§ 38-2021.03(b), (d)(3), 38-2021.04(b).

DCRB processes applications for Plan benefits, see 31 C.F.R. §§ 29.403, 29.404(a), and also reconsiders those initial benefit determinations. Id. § 29.404(b)–(d). Applicants claiming federal benefits for any service rendered through June 30, 1997, may appeal DCRB's reconsideration decision to Treasury's Office of D.C. Pensions (ODCP). Id. § 29.405(a); see also Miley, 42 F. Supp. 3d at 167. Finally, a party may then seek judicial review of both DCRB's and ODCP's decisions. See Rivera v. Lew, 99 A.3d 269, 274 (D.C. 2014); D.C. Code §§ 1-747(a)(1)(B), 1-815.01(a)(1), 1-815.02(a).

Separately, the District also provides temporary-total-disability (TTD) benefits — commonly known as workers' compensation — to employees who suffer job-related injuries and

2

illnesses. See D.C. Code § 1-623.02b; ECF No. 23 (DCRB MSJ) at 4. Unlike the retirement payments at issue in this case, TTD benefits are not overseen by DCRB or drawn from the Plan. See D.C. Code § 1-623.42; DCRB MSJ at 4 n.3. Once granted, they can be modified when the "disabling condition" ceases or no longer prevents an employee's return to work, see D.C. Code § 1-623.24(d)(4)(A)–(B), and, in certain instances, when an employee retires. Cf. Baliles v. D.C. Dep't of Emp't Servs., 728 A.2d 661 (1999).

    B. Factual Background

Moving to the particulars of this case, the Court draws the facts from the DCRB and ODCP administrative records. See ECF Nos. 31-1, 32–33, 33-1, 34, 34-1, 36-1 (DCRB AR); id. Nos. 35, 35-1 (ODCP AR). Nicholas began her tenure as a DCPS teacher in September 1982. See DCRB AR at 269; ODCP AR at 2. After suffering a physical injury in the classroom in 2001, she began receiving workers' compensation. See DCRB AR at 4; ODCP AR at 2, 74.

In March 2006, a physician performed a psychiatric evaluation and determined that Plaintiff "[would] not be able to return to the classroom" because of a "chronic, long-standing" mental illness. See DCRB AR at 59–60. He further found that the 2001 "work injury was not sufficient to have either caused or worsened her disorder." Id. at 60. Another physician then reviewed the psychiatrist's report and concluded that Plaintiff was "totally and permanently disabled from the job of a teacher in DC public schools." Id. at 299. These reports in tow, Plaintiff filed for retirement, asking for a disability benefit. Id. at 145–49. The District granted her application, effective May 31, 2006. Id. at 150–51; see also DCRB MSJ at 6. It then terminated her TTD benefits, and while the records are not particularly enlightening on the District's reason for doing so, this appears to be "because of her receipt of retirement compensation." DCRB AR at 288; see also id. at 17.

3

That termination sparked a multi-year conflict between Nicholas and DCPS, with Plaintiff seeking reinstatement of her TTD benefits (on top of the disability-retirement benefit that DCRB had granted). See DCRB AR at 14–20; ODCP AR at 73–75. She argued that the District had improperly terminated her workers' compensation, as she had yet to recover from her injuries incurred in the 2001 incident. See DCRB AR at 14–20. Ultimately, in February 2017, an administrative law judge agreed that the District should not have canceled her benefits. See DCRB AR at 285–90; ODCP AR at 72–77. The ALJ ordered the District to pay Plaintiff workers' compensation — reduced by the amount she had received in disability retirement — retroactive to May 2006 and ongoing into the future. See DCRB AR at 285–90; ODCP AR at 72–77. The District then reinstated Plaintiff's TTD benefits and, for reasons that are not fully clear from the records but are apparently tied to her receipt of workers' compensation, also terminated her disability-retirement benefit. See DCRB AR at 72.

In December 2017, another physician — Dr. Stanley Rothschild — performed an independent medical examination, which resulted in a written report based on his review of her medical records and a physical examination. See DCRB AR at 42–45; ODCP AR at 52–53. He determined that the injuries from the 2001 incident no longer imposed a barrier to her return to work. See DCRB AR at 42–45; ODCP AR at 52–53. He further acknowledged that a "psychiatrist [had] determined that she was mentally not fit to teach." DCRB AR at 43, 45 ("[H]er psychiatric evaluations [do] not permit her to go back to work."); ODCP AR at 52–53. Because of these conclusions, the District notified Plaintiff in January 2018 that she was no longer eligible for workers' compensation. See DCRB AR at 4–5; ODCP AR at 52–53. It appears from the records that, in the period following that decision, Plaintiff was not receiving any benefits.

4

Lest that be the end of the parties' benefits dispute, Plaintiff then applied for <u>voluntary</u> retirement, which would be effective April 4, 2018, and thus would include 12 more years of service than the retirement benefits she had received starting in 2006. <u>See</u> DCRB AR at 162–65; ODCP AR at 49. Nicholas explains in briefing that she submitted her application following "a settlement agreement . . . which made her eligible for voluntary retirement." ECF No. 28 (Pl. Opp.) at 1.

After receiving her application, DCPS returned Plaintiff to "pay status" effective April 3, 2018. <u>See</u> DCRB AR at 156. (No party explains to the Court exactly what "pay status" means, but they agree that it does not reflect Plaintiff's return to the classroom.) The District then granted her voluntary-retirement benefits, effective April 4, 2018, and ordered her to pay back $370,534 that she had received in disability benefits following her previous retirement in 2006. <u>See</u> DCRB AR at 125, 132, 156–57; ODCP AR at 18–19, 45. Recouping that sum was necessary, according to the District, in order to avoid Plaintiff's receiving a double benefit for the 2006–18 period. <u>See</u> DCRB AR at 132.

After further review, however, DCRB determined that it had erred in finding Plaintiff eligible for voluntary retirement. <u>See</u> DCRB AR at 37–38; ODCP AR at 18–19. It issued a Correction Decision, canceling the voluntary benefit effective April 4, 2018, and reinstating her previously terminated disability benefit effective May 31, 2006. <u>See</u> DCRB AR at 37–38; ODCP AR at 18–19.

In that Correction Decision, the Board noted that Plaintiff had "retired under the Plan in 2006 based on a mental disability" — "not related to [her] 2001 work-related injury" — "that prevented [her] from satisfactorily performing [her] teaching duties." DCRB AR at 37; ODCP AR at 18. It explained that "[b]ecause [she had] retired under the Plan due to a disability that

5

prevented [her] from satisfactorily performing [her] teaching duties, [she was] not eligible for voluntary retirement." DCRB AR at 38; ODCP AR at 19. As there was "no record showing that [she had] recovered from [her] disability under which [she had] retired in 2006 or that [she had] been] reinstated to [her] teaching job after [her] 2006 retirement," the Board found that it had "erroneously stopped her disability-retirement-benefit payments in 2017 and erroneously paid [her] voluntary retirement benefit payments [she was] not eligible to receive." DCRB AR at 38; ODCP AR at 19. DCRB thus reinstated her disability retirement and informed her that, because of this reclassification, she did not owe $370,534 after all. See DCRB AR at 37–38; ODCP AR at 18–19.

Plaintiff requested reconsideration of this determination and sought restoration of her voluntary-retirement benefits as well as a declaration that she would still not owe $370,534. See DCRB AR at 69–70. DCRB denied Plaintiff's reconsideration on September 13, 2019. Id. at 72–74. It concluded that she was properly retired with disability benefits in 2006, that those benefits should not have been cut off, and that she did not owe an outstanding debt. Id. at 73–74.

Two levels of administrative review followed, and the decision from each is challenged in this case. Plaintiff submitted her administrative appeal to the District on November 12, 2019. See DCRB AR at 112–16; ODCP AR at 9–10. She argued that DCRB's determination was contrary to a settlement agreement that she had reached with DCPS, that DCRB lacked authority to "unravel[] [her] agreement with DCPS," and that her return to "pay status," even if she did not resume teaching, was sufficient for a grant of voluntary retirement. See DCRB AR at 112–16. DCRB denied that petition on February 4, 2020. Id. at 269–71. It explained that she had "failed to identify or produce [a] settlement agreement" and that "[her] own medical records" did not "indicate[] that [she had] recovered from the psychiatric condition which [she had] retired under

6

in 2006," so, despite the brief return to pay status, "DCPS could not have and did not return [her] to employment" as necessary for voluntary retirement. Id. at 271. ODCP "concur[red]" with DCRB's decision and, without additional analysis, denied Plaintiff's appeal. Id. at 283; ODCP AR at 11.

    C. Procedural History

Dissatisfied with these determinations, Nicholas brought suit in this district on July 30, 2020. See ECF No. 1 (Compl.). She subsequently filed an Amended Complaint, revising only her jurisdictional allegations. See ECF No. 22 (Mot. for Leave to File Am. Compl.); ECF No. 25 (Am. Compl.). She challenges DCRB's and Treasury's decisions that she is not eligible for voluntary retirement and asks this Court to order that she does not, and will never, owe DCRB $370,534. See Am. Compl. at 13. After the Court denied Plaintiff's Motion for Discovery, see ECF No. 19 (Discovery Order), DCRB and Treasury each filed a Motion for Summary Judgment. See DCRB MSJ; ECF No. 21 (ODCP MSJ). Those Motions are the subject of this Opinion.

**II.     Legal Standard**

Because of the limited role federal courts play in reviewing administrative decisions, the typical Federal Rule 56 summary-judgment standard does not apply to Defendants' Motions. Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006). Instead, "the function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did." Id. at 90 (quoting Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985)); Rivera v. Lew, 949 F. Supp. 2d 266, 269 (D.D.C. 2013) (same for review of DCRB and ODCP decisions). Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the

administrative record and is otherwise consistent with the statutory standard of review. Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002); see also Rivera, 949 F. Supp. 2d at 269.

The parties agree that review of the DCRB's decision is governed by the District's Administrative Procedure Act, under which courts "defer to the agency's interpretation of the statute it administers," Rivera v. Lew, 99 A.3d at 274, and "must affirm an agency's ruling unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Adgerson v. Police & Firefighters' Ret. & Relief Bd., 73 A.3d 985, 990 (D.C. 2013) (citation omitted); see also D.C. Code § 2-510(a)(3)(A), (E); DCRB MSJ at 11; Pl. Opp. at 11. A court checks only that the agency "(1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings." Beckman v. D.C. Police & Firefighters' Retirement & Relief Bd., 810 A.2d 377, 384 (D.C. 2002) (internal citations omitted); see also Adgerson, 73 A.3d at 990. "If this court . . . concludes that the Board's findings are supported by substantial evidence, it must accept those findings, even though there may also be substantial evidence in the record to support a contrary finding." Baumgartner v. Police & Firemen's Ret. & Relief Bd., 527 A.2d 313, 316 (D.C. 1987); see also Citizens Ass'n of Georgetown v. D.C. Bd. of Zoning Adjustment, 925 A.2d 585, 589 (D.C. 2007) ("Substantial evidence is relevant evidence which a reasonable trier of fact would find adequate to support a conclusion."). Pursuant to this deferential standard, judicial review is thus "limited." Adgerson, 73 A.3d at 990.

ODCP's interpretation of the Plan is similarly entitled to "great deference," and its "factual determinations" "shall be presumed correct unless rebutted by clear and convincing evidence." D.C. Code § 1-805.02(b); see also Zoglio v. Mnuchin, 784 F. App'x 792, 793 (D.C. Cir. 2019). While there is little caselaw meat available to flesh out the bones of this standard, no

8

party argues that anything "turns on the slight differences" between the standards the Court must employ when reviewing the two decisions. Rivera, 949 F. Supp. 2d at 270.

**III.   Analysis**

Defendants move for summary judgment on all claims, arguing that DCRB and ODCP properly determined that Plaintiff is entitled to the disability-retirement benefit that she is receiving, but not voluntary-retirement benefits. Plaintiff responds that Defendants made legal and factual errors when they "divest[ed] her of her status as a voluntary retiree" and reinstated her disability-retirement benefits. See Pl. Opp. at 1. She also renews her request for extra-record discovery and asks this Court to declare that DCRB cannot, now or ever, collect $370,534 from her. The Court will start with the discovery issue before turning to the heart of the benefits dispute and concluding with her request for relief from the putative debt.

A.   Discovery

Relying on arguments made in her prior Motion for Discovery, which the Court denied, Plaintiff again asks for "limited discovery" to fix "inconsistencies and gaps in the 'administrative record.'" Pl. Opp. at 15. Under Rule 56(d), a court may defer considering a motion for summary judgment, deny the motion, or allow time for the non-movant to obtain affidavits or declarations or to take discovery if that party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Such an affidavit must state "with sufficient particularity why additional discovery is necessary." United States ex rel. Folliard v. Gov't Acquisitions, Inc., 764 F.3d 19, 26 (D.C. Cir. 2014) (citation and internal quotation marks omitted). Discovery is generally inappropriate where, as here, judicial review of the agency's action must be based upon the administrative record. See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp., 940 F.2d 685, 698 (D.C. Cir. 1991); Dupree v. D.C. Dep't of Corr.,

132 A.3d 150, 154 (D.C. 2016) (judicial review of District agency decisions is confined "strictly to the administrative record"). The Court finds no basis for an exception here.

As the Court explained in denying Plaintiff's earlier motion, see Disc. Order at 1–2, extra-record "discovery is permissible in only two circumstances: [1] when it provides the only possibility for effective judicial review and . . . there have been no contemporaneous administrative findings (so that without discovery the administrative record is inadequate for review), and [2] when there has been a strong showing of bad faith or improper behavior (so that without discovery the administrative record cannot be trusted)." Saratoga Dev. Corp. v. United States, 21 F.3d 445, 458 (D.C. Cir. 1994) (internal quotation marks and citations omitted); see also Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd., 663 F.3d 476, 487–88 (D.C. Cir. 2011) (similar). As was true when the Court denied her initial motion, Plaintiff "neither alleges bad faith []or claims a lack of administrative findings," nor "even submits proposed document requests or interrogatories or persons to be deposed." Disc. Order at 2. Then, as now, "[s]he has thus not cleared the high hurdle required for the authorization of discovery." Id.

Nor will the Court take Plaintiff's bait to supplement the record, as she appears to attempt to do with the exhibits cited within and attached to her Opposition. She has made no showing — let alone the necessary "strong showing" — "of bad faith or improper behavior" by the agencies. Theodore Roosevelt Conservation Partnership v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010) (internal quotation marks and citation omitted); see also Disc. Order at 2. Further, she does not contend that "the record is so bare that it prevents effective judicial review." Theodore Roosevelt Conservation Partnership, 616 F.3d at 514; see also Disc. Order at 2. While she relies on these documents in her Opposition — in particular, on her declaration that was prepared in response to Defendants' Motions and thus could not have been part of the administrative record,

see ECF No. 28-1 (4/22/21 Declaration of Annetta H. Nicholas) — she never explains why this supplementation is appropriate under our Circuit's high bar. The Court thus limits its review to the administrative record.

### B. Retirement Benefit

The main dispute between the parties concerns Plaintiff's retirement benefit. DCRB argues that because the record contains no evidence that she recovered from a psychiatric condition, it properly determined that she was eligible for only a disability-retirement benefit. See DCRB MSJ at 12–13. ODCP similarly contends that its decision to follow DCRB was not unreasonable. See ODCP MSJ at 9–12. Opposing summary judgment, Plaintiff responds that Defendants' decisions should be overturned because DCRB both lacked the legal authority to deny her voluntary retirement and made factual errors. See Pl. Opp. at 11–15. Because ODCP merely concurred in DCRB's determination without providing additional analysis, the Court focuses its attention on the reasoning DCRB set forth. In doing so, it finds no basis to reverse Defendants' decisions.

DCRB asks the Court to uphold its Benefit Appeal Decision, in which it concluded that Plaintiff was eligible for only a disability-retirement benefit effective May 31, 2006. As it explained in that decision, "DCRB had no authority to stop [her] disability retirement benefit payments" in 2017 because the record lacked "medical records . . . indicat[ing] that [Plaintiff had ever] recovered from the psychiatric condition which [she had] retired under in 2006." DCRB AR at 270–71; see also D.C. Code § 38-2021.04(b) (allowing for termination of disability-retirement benefits with evidence that retiree "has recovered and is able to discharge his duties as a teacher in [D.C.'s] public schools"); ECF No. 30 (DCRB Reply) at 6–7. DCRB thus concluded that Plaintiff had properly retired in 2006 with a disability benefit. See DCRB AR at

270–71.  As she had already retired and could not return to the classroom as a teacher in 2018, DCRB determined that it could not grant her a voluntary-retirement benefit effective that year. See DCRB AR at 271; DCRB MSJ at 1, 16; D.C. Code § 38-2021.03(a).

Plaintiff contends that this was error, taking issue with DCRB's authority to grant her only disability-retirement benefits.  She first argues that DCRB lacked a legal basis to overturn her settlement agreement with DCPS, as well as the power to divest her of voluntary-retirement benefits once they had been granted.  See Pl. Opp. at 4–6, 12–13.  Little need be said about the settlement agreement because little can be said: the administrative records contain no such contract.  See DCRB MSJ at 17 (arguing same).  Nor, it is worth noting, does Nicholas argue that a settlement agreement could be found if the Court permitted discovery.  Still, she maintains that, "as part of a settlement agreement between Plaintiff and [DCPS], to end a decade-long litigation on Plaintiff's entitlements, DCPS reinstated Plaintiff and returned her to teacher pay status, which made her eligible for a voluntary retirement on April 4, 2018."  Pl. Opp. at 4.

A few documents in the administrative records do mention a "settlement agreement" in passing, but none provides any indication that the District contractually agreed to make her eligible for or to pay her voluntary retirement.  For example, Nicholas points to a letter that she received from Daniel Hernandez, DCRB's Chief Benefits Officer, in which he wrote that "in accordance with a 'Settlement Agreement' between [Plaintiff] and DCPS, DCPS rescinded [her] May 31, 2006 disability retirement and reinstated [her] to workers' compensation leave retroactively to June 1, 2006."  DCRB AR at 131.  A footnote of the letter again mentions an agreement.  Id.  But the letter does not tie any settlement agreement to her eligibility for or guarantee of voluntary retirement.  Id. at 131–32.  Neither that document, nor any other

identified by Plaintiff, indicates that DCRB's decision to grant Plaintiff disability-retirement benefits overturned a settlement agreement.

She next maintains that DCRB lacked authority to revoke her voluntary retirement once it had been granted. See Pl. Opp. at 11–14. Specifically, she insists that her rights had vested and "[w]hile DCRB might have the right to determine retirement rights and benefits, it does not have the right to determine the status of an employee vis-a-vis his or her employer." Id. at 13. According to Plaintiff, "[T]he fact that she was returned to 'pay status' speaks for itself," id. at 14, and once DCPS took that action, DCRB only "had authority to administer her retirement rights and benefits according to that status." Id. at 13. Nicholas, however, points to no caselaw or statutory basis to support her understanding of DCRB's authority as it concerns her "pay status." Pl. Opp. at 14 (quoting D.C. Code provisions relevant to TTD benefits, not retirement); DCRB Reply at 9. Under the deferential standard of review that applies here, the Court thus cannot find unlawful DCRB's determination that Plaintiff needed to return to the classroom to be eligible for voluntary retirement.

Turning then to the factual basis for DCRB's decision, Plaintiff takes aim at its findings about her mental health. See Pl. Opp. at 7–9, 14–15. Specifically, she argues that DCRB's reliance on Dr. Rothschild's 2017 report was improper because he reviewed an "imaginary medical report" by a psychiatrist in concluding that she was unfit to work. Id. at 7. The sum of her argument appears to be that DCRB erred in concluding that she remained eligible for disability-retirement benefits and could not return to the classroom. As the Court previously noted, Dr. Rothschild performed an independent medical examination, which involved both reviewing her medical records and conducting a physical exam. See DCRB AR at 42–45; ODCP AR at 52–53. He found that "her psychiatric evaluations [do] not permit her to go back to

13

work." DCRB AR at 45. While Plaintiff takes issue with his conclusion, calling the psychiatrist's report on which it relies "fictitious," Pl. Opp. at 8, there is no contrary medical evidence in the records that would enable the Court to overturn DCRB's decision. As Plaintiff raises no unique arguments targeting ODCP's decision, it too must be upheld.

### C. $370,534 Debt

One final issue remains: Plaintiff's request for the Court to "[d]irect[] Defendants to waive any reimbursement by Plaintiff to DCRB of the $370,534 of her disability retirement benefits." Am. Compl. at 13. DCRB has "repeatedly and expressly disavowed that plaintiff owes it [that] debt." DCRB MSJ at 21. It does acknowledge a weak possibility that the debt could be reinstated if Plaintiff becomes eligible for voluntary-retirement benefits at some point, but it explains that "any potential debt that may ultimately be assessed by the Board [is] contingent" upon any future benefits decisions and is thus "hypothetical." DCRB MSJ at 22 (emphasis added). As Plaintiff lacks Article III standing with respect to this claim, the Court cannot entertain the issue. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek.").

Nicholas recognizes that Defendants have canceled that debt and that she currently owes no such sum. See Pl. Opp. at 15; see also Am. Compl., ¶ 28. She thus has not suffered a past injury sufficient for standing. E.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (plaintiff having "suffered an injury in fact" is necessary component of standing) (cleaned up). Still, raising a concern that DCRB could perhaps "reimpose the debt" at some point, Plaintiff asks the Court to "order[] DCRB that it cannot recoup these funds from Plaintiff in the future." Am. Compl. at 13; see also Pl. Opp. at 3 ("[D]efendants might seek to reinstate the . . .

penalty."). Such "allegations of possible future injury are not sufficient" for standing. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (cleaned up); see also TransUnion LLC, 141 S. Ct. at 2210; Attias v. Carefirst, Inc., 865 F.3d 620, 626 (D.C. Cir. 2017) ("[T]hreatened injury must be certainly impending to constitute injury in fact," though some cases have "found standing based on a substantial risk that the harm will occur.") (quoting Clapper, 568 U.S. at 410, 414 n.5) (cleaned up). As not even a substantial risk of harm exists, judgment is thus appropriate on this claim, too.

**IV.   Conclusion**

The Court will grant Defendants' Motions for Summary Judgment. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 28, 2021